## Smith's Estate

*Donald L. LaBarre*, for accountant.
*J. Barton Rettew, Jr.*, for claimant.

GEARHART, P. J., May 4, 1939.—Decedent, unmarried, died February 27, 1938, intestate. Letters of administration issued March 10, 1938; proof of publication of the grant of same was submitted. . . .

The account shows a balance in hand for distribution of $65.52.

The only question presented for decision is whether or not the United States Government is entitled to have its income tax claim given a priority status. If it is, the administratrix must be surcharged in the amount of $134.75. This sum is made up of credit taken for nursing claims in the amount of $24, paid March 14, 1938; a hospital bill of $45.75, paid March 22, 1938, and a doctor bill of $65, paid July 7, 1938.

The Government's claim for priority is based on section 3466 of the United States Revised Statutes, page 687, 31 U. S. C. §191, which provides as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied . . .".

Revised Statutes, sec. 3467, 31 U. S. C. §192, provides:

"Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

The accountant freely acknowledges that under these sections of the Revised Statutes of the United States a debt due to the United States by a decedent is entitled to priority of payment by his administrators: Jones' Estate, 84 Pa. Superior Ct. 170.

The accountant also acknowledges her liability on account of the $65 paid for professional services, but argues that she should not be charged for the expenditures made for hospital and nursing claims, because the payments were made on March 14, 1938, and March 22, 1938, at a time when she had no reason to believe there was anything due the United States Government. Accountant avers that the claims were paid in good faith, and since

she was not in receipt of a notice of claim from the Government at that time, the priority of the Government is lost. She cites United States v. Clark, 25 Fed. Cas. 447, 451, no. 14,807. Mr. Justice Thompson, writing the opinion in that court relative to the matter of notice, stated:

"As to this point, the act is entirely silent. It is to be put, therefore, on the general principles of law relative to the liability of trustees. They are not liable until notice. . . . In all cases of this kind, to protect a trustee, he must act bona fide in disposing of the property; and when such circumstances come to his knowledge, as should reasonably put a prudent man on inquiry, this is all the notice which is required. It has been said here that no notice would be available unless it came from the United States, they being the creditors. This is not correct. It is enough if the trustee be in possession of such facts as that a faithful and fair discharge of his duty would put him on inquiry."

In the case before us, decedent died February 27, 1938. Letters of administration were granted March 10, 1938. On March 14, 1938, the disputed claims were paid. On the same day, viz., March 14, 1938, the accountant executed an application for extension of time for filing an income and excess-profit tax return, setting forth the facts which we have already enumerated, and adding that there was not then available to her the information necessary for preparing the income tax return.

Under this state of facts it is hard to believe that a prudent person would not have been put on guard. The very proposition which now confronts us was then the subject of consideration; namely, income tax due and owing the Government.

Prudence required that, notwithstanding the laudable desire to pay nursing and doctor bills promply, inquiry should first be made concerning the Government's claim, which under the statute takes priority.

The payments were made in the best of good faith, and, we apprehend, in the belief that there were ample funds available to pay all claims; nonetheless, our duty requires us to apply the law as in this case enacted by the Congress of the United States. While our sympathies are with the accountant, our duty is clear under the statute and the facts here presented; the accountant must be surcharged in the total amount of $134.75.

The accountant is directed to pay the sum of $200.27 (the balance in hand and the amount of the surcharge) to the United States Government on account of its income tax claim.

And now, May 4, 1939, this account is confirmed nisi; in the absence of exceptions filed within 10 days herefrom, such confirmation shall become absolute, as of course.